STATE of Missouri, Plaintiff–
Respondent,

v.

Morris T. BURKS, Defendant–
Appellant.

No. SD 31023.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 3, 2012.

Motion for Rehearing or Reconsideration
and
Transfer Denied Feb. 24, 2012.

Stacie Bilyeu, Springfield, MO, for Appellant.

Lindsey N. Phoenix, Springfield, MO, for Respondent.

JEFFREY W. BATES, Judge.

After a bench trial, Morris Burks (Defendant) was convicted of driving while intoxicated in violation of § 577.010.[1] Defendant presents three points on appeal. He contends: (1) the trial court erred in admitting evidence that Defendant refused to take a portable breath test prior to his arrest; (2) the trial court erred in admitting evidence concerning certain field sobriety tests administered to Defendant; and (3) the evidence was not sufficient to support Defendant's conviction. Finding no merit in any of Defendant's points, we affirm. For ease of analysis, we will review Defendant's points in reverse order.

### Point III

In Defendant's third point, he challenges the sufficiency of the evidence to support his conviction for driving while intoxicated. On appeal, we accept as true the evidence and reasonable inferences derived therefrom that are favorable to the judgment. *State v. McQuary,* 173 S.W.3d 663, 667 (Mo.App.2005). We disregard all unfavorable evidence and inferences. *Id.* Viewing the record in that light, as we must, the following evidence was presented at trial.

---

**1.** All references to statutes are to RSMo (2000) unless otherwise indicated. Defendant also was convicted of speeding, but he has not appealed from that conviction.

On April 2, 2010, Officer Jonathan Conklin (Officer Conklin) was on patrol in Springfield. At approximately midnight, Officer Conklin was in his patrol car at the intersection of Broadmoor and Glenstone. The speed limit on Glenstone was 40 miles per hour. He observed a 2005 Dodge Magnum heading north on Glenstone at approximately 90 miles per hour. Officer Conklin pursued the vehicle and initiated a traffic stop. There were two occupants inside the Magnum.

Defendant was the driver of the vehicle, and there was a male passenger in the right front seat.[2] When Defendant rolled down his window, Officer Conklin observed that Defendant's eyes were glassy, watery and bloodshot. He had the strong odor of intoxicants on his breath. Defendant said he had consumed one glass of beer with his dinner. Because Defendant had a weapon in his vehicle, Officer Conklin asked Defendant and his passenger to get out of the car. As Defendant did so, he swayed, staggered and stumbled a little bit.

Officer Conklin performed several standardized field sobriety tests because he suspected that Defendant might be impaired. Defendant failed the horizontal gaze nystagmus (HGN) test, the walk-and-turn test and the one-legged stand. Officer Conklin then asked Defendant to submit to a portable breath test (PBT). Defendant declined to do so.

Based upon the aforementioned observations of Defendant's appearance and performance on the field sobriety tests, Officer Conklin concluded that Defendant was most likely intoxicated. Officer Conklin placed Defendant under arrest and trans-

ported him to the Greene County Jail. After advising Defendant of his rights and the requirements of Missouri's implied consent law, Officer Conklin asked Defendant to take a breathalyzer test. He refused. While at the jail, Defendant stated that he had drunk two beers that night. He admitted that he was under the influence of alcohol.

The trial court found that the State had proven beyond a reasonable doubt that Defendant was guilty of driving while intoxicated. Defendant argues that the evidence was insufficient to support that finding. We disagree.

In a court-tried criminal case, the judge's findings have the force and effect of a jury verdict. Rule 27.01(b); *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002).[3] Thus, we use the same standard of review in a court-tried and a jury-tried case. *State v. Fraga*, 189 S.W.3d 585, 586 (Mo.App.2006). "Appellate review is limited to determining whether there was sufficient evidence from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. McLarty*, 327 S.W.3d 557, 562 (Mo.App. 2010). The State may rely upon direct and circumstantial evidence to meet its burden of proof. *See State v. Howell*, 143 S.W.3d 747, 752 (Mo.App.2004). "In weighing the sufficiency of the evidence, this Court will accept as true all reasonable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. This Court's function does not include reweighing the evidence." *State v. Chambers*, 207 S.W.3d 194, 196 (Mo.App.2006) (citation omitted).

**2.** Defendant admitted during his trial testimony that he had been driving the Magnum. Officer Conklin testified that Defendant said he was racing another car just prior to being stopped by police.

**3.** All references to rules are to Missouri Court Rules (2011).

There are two elements of the offense of driving while intoxicated: (1) the defendant was driving or operating a motor vehicle; and (2) he or she did so while intoxicated. § 577.010; *Chambers,* 207 S.W.3d at 197; *State v. Anderson,* 107 S.W.3d 447, 450 (Mo.App.2003). Thus, the issue we must decide is whether the State presented sufficient evidence from which the trial court could have found that the foregoing two elements were established beyond a reasonable doubt. *Chambers,* 207 S.W.3d at 197; *Anderson,* 107 S.W.3d at 450. We answer that question in the affirmative.

■ The first element is easily satisfied. Officer Conklin observed the Magnum in operation on Glenstone, and Defendant admitted at trial that he had been driving that vehicle. Accordingly, there was sufficient evidence from which the trial court could have concluded beyond a reasonable doubt that Defendant was driving or operating a motor vehicle. There also was sufficient evidence from which the trial court could have concluded that Defendant did so while intoxicated. Viewed in the light most favorable to the judgment, there was evidence that: (1) Defendant drove his vehicle at approximately 90 miles per hour on a city street with a 40 mile-per-hour speed limit; (2) his eyes were glassy, watery and bloodshot; (3) he had the strong odor of intoxicants on his breath; (4) he swayed, staggered and stumbled upon exiting his vehicle; (5) he admitted that he had been drinking and was under the influence of alcohol; (6) he failed the HGN, walk-and-turn and one-legged stand field sobriety tests; (7) Officer Conklin opined that Defendant was most likely intoxicated at the time of his arrest; and (8) Defendant refused to take a breathalyzer test at the police station. This is sufficient to support Defendant's conviction for driving while intoxicated in violation of § 577.010.

*See, e.g., State v. Bradley,* 57 S.W.3d 335, 341 (Mo.App.2001).

■ Defendant contends that his conviction should be reversed because it is contrary to weight of the evidence, which showed that his behavior could be explained for reasons other than intoxication. He cites civil suspension and revocation cases such as *Hagler v. Director of Revenue,* 223 S.W.3d 907 (Mo.App.2007), to support his assertion that this Court can reweigh the evidence in this criminal case. We disagree. An assertion that the judgment is against the weight of the evidence is cognizable in a civil action in which appellate review is conducted pursuant to the principles articulated in Rule 84.13(d) and *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We defer to the trial court's credibility determinations, and we are bound by the lower court's factual findings unless we are firmly convinced that the judgment is wrong. *See Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App. 2010). Rule 84.13(d) and *Murphy,* however, do not apply to this criminal case. *See City of Kansas City v. McGary,* 218 S.W.3d 449, 451 n. 1 (Mo.App.2006). An appellate court does not engage in a weight-of-the-evidence review in a criminal case. *See State v. Miller,* 499 S.W.2d 496, 499 (Mo.1973); *State v. Goddard,* 34 S.W.3d 436, 438 (Mo.App.2000); *State v. Colson,* 829 S.W.2d 669, 669 (Mo.App. 1992). The applicable standard of review requires us to ignore all evidence and inferences that are contrary to the trial court's finding of guilt. *Chambers,* 207 S.W.3d at 196. Point III is denied.

### Point II

In Defendant's second point, he contends the trial court erred by admitting Officer Conklin's testimony about the results of his field sobriety tests. The fol-

lowing additional facts are relevant to this point.

Officer Conklin testified that he had received training on how to detect the odor of alcoholic beverages and how to determine whether a driver was operating a vehicle while intoxicated. During Officer Conklin's three years as a police officer, he had made between 20 and 30 arrests for driving while intoxicated. On all of those occasions, he administered field sobriety tests to the drivers. Once Defendant exited his vehicle, Officer Conklin performed three standardized field sobriety tests on Defendant.

The HGN test was the first one administered to Defendant. Officer Conklin had received eight hours of classroom and practical instruction in how to properly perform this test. During that instruction process, Officer Conklin administered the HGN test to impaired and unimpaired volunteers. This taught Officer Conklin how to recognize nystagmus, which is an involuntary movement of the eyes. Because it was important to see Defendant's pupils and eyeballs, Officer Conklin had Defendant remove his eyeglasses. Officer Conklin initially observed that Defendant's pupils were of equal size, his eyes tracked equally and there was no resting nystagmus. Next, Officer Conklin instructed Defendant to keep his head still while the officer moved his finger in a series of motions. Defendant was told to follow the finger with his eyes only, and he said that he understood. Officer Conklin checked for lack of smooth pursuit by moving his finger to the right and left for several seconds. Defendant's eyes indicated a lot of nystagmus because his eyes were jumping back and forth. Officer Conklin then performed the maximum deviation portion of the test by holding his finger 12 to 15 inches from Defendant's eyes, slightly above the eye line, and moving his finger

to the left until the Defendant's eyeballs were in the corners of his eye sockets. This position was held for four seconds to see whether the eyeballs moved and then repeated in the opposite direction. Defendant exhibited nystagmus in both eyes. Officer Conklin next performed the 45-degree angle test by twice moving his finger on a four-second count to see if there was movement in Defendant's eyes. Both eyes showed nystagmus. Last, Officer Conklin checked for vertical gaze nystagmus by raising his finger up above Defendant's head. Officer Conklin was checking for six indicators of impairment during that HGN test. The existence of four indicates impairment. Defense counsel objected to Officer Conklin being allowed to testify about the results of this test. Counsel argued there was an insufficient foundation because Officer Conklin did not give five instructions required by the NHTSA before administering the test. The trial court overruled this objection. Officer Conklin testified that Defendant exhibited all six indicators of impairment during the HGN test, which suggested Defendant was impaired.

The walk-and-turn test was the second field sobriety test administered by Officer Conklin. This is a divided-attention test to see whether the subject can follow the instructions being given and perform the test as directed. There are eight indicators of impairment in this test. Observation of two indicators suggests impairment. Officer Conklin told Defendant to: (1) put his hands at his sides; (2) place his left foot on the ground with his right foot in front of it, heel-to-toe; (3) remain steady without moving; and (4) perform the walk-and-turn when told to do so. Officer Conklin also demonstrated how this should be done. Defendant understood the instructions and performed the test. Defense counsel objected to Officer Conklin being allowed to testify about the results

of this test because he did not give 11 instructions required by the NHTSA. The trial court overruled this objection. Officer Conklin testified that Defendant exhibited all eight indicators of impairment when he performed the walk-and-turn test, which suggested he was impaired.

The third field sobriety test administered by Officer Conklin was the one-legged stand. He had received training on how to administer this test. He explained the test to Defendant and gave a demonstration as well. The test was performed on a dry, well lit, and relatively flat parking lot that was free of debris. Defendant was instructed to: (1) place his arms at his side; (2) choose a leg; (3) look down at the foot of that leg; (4) raise the foot about six inches above the ground; and (5) count out loud while holding that position. Officer Conklin watched for four indicators during the test, which included the movement of the subject's arms more than six inches to maintain balance, hopping, swaying or putting the foot down. The existence of two indicates impairment. Defense counsel objected to Officer Conklin being allowed to testify about the results of this test because Officer Conklin did not give 10 instructions required by the NHTSA. The trial court overruled this objection. Officer Conklin testified that Defendant exhibited all four indicators, which suggested he was impaired.

■ In Defendant's second point, he contends the trial court erred by admitting Officer Conklin's testimony about the results of the HGN, walk-and-turn and one-legged stand field sobriety tests administered to Defendant. We review the trial court's decision to admit evidence for abuse of discretion. *State v. Lutz*, 334 S.W.3d 157, 161 (Mo.App.2011). "A decision to admit evidence constitutes an abuse of discretion when the decision is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *State v. Smith*, 330 S.W.3d 548, 553 (Mo.App.2010). Defendant argues that there was no foundation for the admission of this testimony because the instructions given by Officer Conklin were not in accord with the NHTSA guidelines.[4] We find no merit in this contention.

■ With respect to the HGN test, the required foundation for admission of the test results is twofold: (1) the officer was adequately trained to administer the test and render an opinion; and (2) the test was properly administered. *See State v. Ostdiek*, 351 S.W.3d 758, 770–71 (Mo.App. 2011). Eight hours of instruction on how to administer and interpret the HGN test has been recognized as adequate training. *Id.* Officer Conklin testified that he had received the requisite eight hours of training. During his testimony, he also explained in detail the instructions he gave Defendant and the observations that were made during each phase of the HGN test. This testimony was sufficient to show that Officer Conklin properly performed this field sobriety test. *See State v. Rose*, 86 S.W.3d 90, 98–99 (Mo.App.2002) (setting out the requisite steps involved in the proper administration of an HGN test); *State v. Hill*, 865 S.W.2d 702, 704 (Mo.App. 1993) (containing the same explanation of what constitutes proper administration of

---

4. The appendix to Defendant's brief contains a copy of what he describes as "the relevant NHTSA guidelines." There is no indication in the record that these guidelines were admitted in evidence or shown to the judge during the trial. Because this appendix material is outside the record, we will not consider it on appeal. *See State v. Lloyd*, 205 S.W.3d 893, 909 (Mo.App.2006).

an HGN test).[5] While defense counsel generally argued that failure to follow the NHTSA guidelines would affect the reliability of the tests, the trial court was presented with no evidence to that effect. *See Martin v. Director of Revenue*, 248 S.W.3d 685, 688–89 (Mo.App.2008). Defendant has cited no authority, and we are aware of none, holding that an adequate foundation for the admission of HGN test results requires testimony from the officer that all of the NHTSA guidelines were followed during the administration of that test. Thus, the trial court did not err in admitting Officer Conklin's testimony about the HGN results. Any challenges raised by Defendant to the procedures followed by Officer Conklin during the administration of this test go to its weight, rather than to the admissibility of the test results. *See Little v. Vincent*, 248 S.W.3d 714, 718–19 (Mo.App.2008); *Rose*, 86 S.W.3d at 98–99.

■ With respect to the walk-and-turn and one-legged stand tests, compliance with the NHTSA guidelines is not required in order for the results to be valid. *See Martin*, 248 S.W.3d at 688–89. Because these field sobriety tests merely assist the officer in observing the suspect's reactions and physical condition, no foundation concerning the scientific basis for such tests is even required. *See id.*; *State v. Hill*, 812 S.W.2d 204, 208 (Mo.App.1991) (noting that such tests are routinely admitted as evidence); *State v. McHaffie*, 762 S.W.2d 875, 877 (Mo.App.1989) (noting that an officer's observations of a suspect can include that person's "reactions during the field sobriety tests"). Thus, the trial court did not err in admitting Officer Conklin's testimony about the walk-and-turn and the one-legged stand field sobriety test results. Once again, any challenges raised by De-

fendant to the procedures followed by Officer Conklin during the administration of these tests go to the weight of the evidence, rather than to the admissibility of the test results themselves.

In sum, the trial court did not abuse its discretion in admitting Officer Conklin's testimony concerning the results of the HGN, walk-and-turn and one-legged stand field sobriety tests that he administered to Defendant. Point II is denied.

*Point I*

Defendant's first point challenges the admission of Officer Conklin's testimony that Defendant refused to submit to a PBT prior to his arrest. The following facts are relevant to this issue.

Prior to trial, Defendant filed a motion to suppress any statements made by Defendant in connection with this incident. The motion alleged, *inter alia*, that Defendant was seized without probable cause. The motion was taken with the case. After Officer Conklin administered the field sobriety tests discussed in Point II, he testified that he asked Defendant to take a PBT. Defense counsel objected to Officer Conklin being allowed to testify about the results of this test. The trial court overruled the objection. Officer Conklin testified that Defendant declined to submit to the PBT. Later, Defendant admitted on cross-examination that he refused to take the PBT.

■ In Point I, Defendant contends the trial court erred in admitting evidence of Defendant's refusal to take the PBT. He argues that such evidence is not admissible pursuant to § 577.021 RSMo Cum.Supp. (2009). We find no merit in that argument. In relevant part, this statute states:

---

**5.** *Hill* was overruled on other grounds by *State v. Carson*, 941 S.W.2d 518, 523 (Mo. banc 1997).

A test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content. The provisions of sections 577.019 and 577.020 shall not apply to a test administered prior to arrest pursuant to this section.

§ 577.021.3 RSMo Cum.Supp. (2009). Thus, this statute specifically authorizes an officer to administer a pre-arrest chemical test to a person suspected of driving while intoxicated. *State v. Yarbrough*, 332 S.W.3d 882, 887 (Mo.App.2011). Because Defendant's motion to suppress had been taken with the case, the trial court was required to decide whether Officer Conklin had probable cause to arrest Defendant. The result of a pre-arrest PBT is admissible on the issue of probable cause. *See State v. Stottlemyre*, 35 S.W.3d 854, 860 (Mo.App.2001). Accordingly, Officer Conklin's testimony that Defendant refused to submit to the PBT was properly admitted on the issue of probable cause. *See, e.g., Findley v. Director of Revenue*, 204 S.W.3d 722, 727 (Mo.App.2006) (evidence supporting the existence of probable cause to arrest included testimony that the driver refused to submit to a pre-arrest PBT); *Flaiz v. Director of Revenue*, 182 S.W.3d 244, 246–49 (Mo.App.2006) (same holding).

Defendant argues, however, that the trial court impermissibly relied on this evidence as proof of Defendant's intoxication. We find no merit in that assertion. In a court-tried criminal case, we presume the trial court is not prejudiced by inadmissible evidence unless it is clear from the record that the judge considered and relied upon such evidence. *State v. Ernst*, 164 S.W.3d 70, 74–75 (Mo.App.2005). Here, the record contains no such indication. When the issue was first broached during Officer Conklin's testimony, the court's comments reflect that it was aware the results of the PBT were not admissible on the issue of whether Defendant was intoxicated.

Even assuming the court considered this evidence for an improper purpose, however, reversal would not be required. *See State v. Franks*, 228 S.W.3d 607, 610 (Mo.App.2007) (noting the near impossibility of obtaining a reversal based upon the improper admission of evidence in a court-tried case). Defendant is not entitled to relief on appeal unless he can demonstrate prejudice by showing that there is a reasonable probability the outcome of the case would have been different if the PBT evidence had been excluded. *See, e.g., State v. Williams*, 353 S.W.3d 685, 688 (Mo.App.2011). Here, the trial court was presented with evidence that Defendant refused to submit to a breathalyzer test at the police station after he was arrested. This evidence was admissible and could be considered by the court as evidence that Defendant was intoxicated. *See* § 577.041.1 RSMo Cum.Supp. (2009); *State v. Royal*, 277 S.W.3d 837, 840 (Mo.App.2009); *State v. Scholl*, 114 S.W.3d 304, 308 n. 2 (Mo.App.2003); *State v. Myers*, 940 S.W.2d 64, 65 (Mo.App.1997). The evidence that Defendant refused to submit to a pre-arrest PBT was cumulative and furnishes no ground for reversal. *See Franks*, 228 S.W.3d at 610. Based upon our review of the record, there is no reasonable probability that the outcome of the case would have been different if the court had excluded the evidence concerning Defendant's refusal to take the pre-arrest PBT. Point I is denied.

The judgment of the trial court is affirmed.

SCOTT, J. and FRANCIS, P.J., Concur.