

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99819 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Dennis N. Smith |
| STEPHEN CAINES, | ) | |
| | ) | Filed: |
| Appellant. | ) | April 15, 2014 |

Stephen Caines appeals from the judgment on his conviction by a jury of driving while intoxicated. Caines challenges the sufficiency of the evidence of intoxication and comments made during the State's closing argument. We affirm.

Viewed favorably to the verdict, the evidence at trial established the following: At approximately 6 a.m. on Halloween morning, Sunday, October 31, 2010, a trooper with the Missouri State Highway Patrol observed Caines's car going 77 miles per hour in a 55 miles per hour zone. The trooper also noticed that the car weaved within its lane. After the trooper activated his emergency lights, it took Caines an unusually long time to pull over. When the car stopped, the trooper approached the driver's window and saw that Caines was the driver and that he was wearing a Dracula-type costume, including a black wig, white makeup, white shirt, red vest, white pants, black shoes and a gold medallion. There were other people in the car, so the trooper asked Caines to get out. Caines had to put his hand on the car to guide himself as he walked to the back of his car. Caines's eyes were glassy and bloodshot, and his speech was

slurred. The trooper detected a strong odor of intoxicants, and Caines admitted to having had a drink.

The trooper gave Caines the horizontal gaze nystagmus test, facing Caines away from the patrol car's flashing lights so they would not interfere with the test. The trooper testified that he observed four clues of intoxication during that test. Because of a hip problem, Caines did not perform the walk-and-turn test. Caines then tried the one-leg stand test, but failed to follow the instructions, looking straight ahead instead of at his raised foot. Caines also swayed during the one-leg stand test. Caines passed the alphabet test, but when asked to count backwards from 99 to 77, he counted past 77 to 72 and then starting miscounting.

The trooper then tried to administer the preliminary breath test ("PBT"), but Caines did not blow into the device. Caines was placed under arrest. On the way to the police station, Caines fell asleep and, at the police station, he was swaying while standing outside the car. The trooper informed Caines of the implied consent law and asked if he would submit to the breathalyzer test. Caines said "I've done everything you've asked of me" and "you can do whatever you want." The trooper said he needed a "yes" or "no" answer, but Caines ignored him. Caines never said "yes" and never took the test. Caines was put in a holding cell, where he again fell asleep. Caines was drooling when woken up, staggered while walking to another area to be fingerprinted and had to stop to "gag" into a toilet.

In addition to the trooper's testimony, the jury watched portions of a video recording taken of the exterior of the patrol car during the arrest and of the interior of the car during the ride to the police station. Caines put on no evidence, and his motion for judgment of acquittal was denied. During closing argument, the State suggested that because it was Halloween and Caines was in costume, he had probably been drinking at a party the night before:

2

> What do you think [Caines] was doing the night before? What do you think he was doing on Saturday night? He admitted to the officer that he had a drink. Given that he's dressed up, given the holiday we have, he was probably at a party. I don't think he was just wearing the makeup and the costume out by himself somewhere. He's probably at a party, he's probably drinking.

The defense objected, arguing that these were facts not in evidence and that the State was speculating. That objection was overruled. The State then told the jury to use "common sense" to decide what Caines was doing that day. The jury found Caines guilty of exceeding the posted speed limit and driving while intoxicated; he was fined $10 and sentenced to 42 days of confinement. This appeal follows.

In Point I, Caines argues that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence of intoxication. Our review of this claim is limited to determining whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime. State v. Gittemeier, 400 S.W.3d 838, 841 (Mo. App. E.D. 2013). Caines challenges each piece of evidence relied upon by the State to support the element of intoxication. None of his arguments convince this Court to reverse.

Caines argues first that speeding and weaving within his lane cannot support a conclusion that he was intoxicated. This type of driving behavior has often been considered as one of several facts amounting to sufficient evidence of intoxication. See State v. Burks, 373 S.W.3d 1, 4 (Mo. App. S.D. 2012) (sufficient evidence of intoxication included excessive speed, glassy, watery and bloodshot eyes, odor of intoxicants, swaying, staggering, stumbling, admission to drinking, failing sobriety field tests and refusal of breathalyzer); State v. Ball, 113 S.W.3d 677, 679 (Mo. App. S.D. 2003) (sufficient evidence of intoxication included weaving car, odor of alcohol, bloodshot and watery eyes and failing one-leg stand test); State v. McCarty, 875 S.W.2d

622, 623 (Mo. App. S.D. 1994) (sufficient evidence of intoxication included driving at high rate of speed, other traffic violations, slurred speech, bloodshot eyes, unsteadiness and smell of intoxicants).

Caines also argues that his refusal to take the PBT before he was arrested cannot be probative of intoxication. We agree that PBT results cannot be used to prove intoxication because that test is too unreliable; they may be used only to show probable cause for the arrest or as exculpatory evidence. State v. Duncan, 27 S.W.3d 486, 488 (Mo. App. E.D. 2000); see also Section 577.021.3. Here, there was no PBT result because Caines refused to take the test by failing to blow into the device. It is not clear that such pre-arrest refusal is admissible to establish intoxication. Although refusal to be tested *after* an arrest is admissible under the implied consent law, pre-arrest tests are treated differently than those administered or refused after the arrest. See Sections 577.020 (governing post-arrest tests); Section 577.021 (governing pre-arrest tests and expressly excluding them from provisions of Section 577.020); Section 577.041.1 (refusal of post-arrest tests admissible in driving while intoxicated cases). In Burks, evidence of the defendant's refusal to take the PBT was admitted to show probable cause, and on appeal, the Court noted that had the evidence been used to establish intoxication that would have been improper. 373 S.W.3d at 8. We need not decide that question in this case, however, because the issue preserved in the trial court and raised on appeal is the sufficiency of the evidence, not its admissibility. Moreover, Caines's refusal to submit to the pre-arrest PBT was cumulative to evidence that he refused to take the breathalyzer after his arrest and, therefore, there can be no prejudice. See id.

Caines concedes that refusal to take a breathalyzer after his arrest is evidence of guilt. See State v. Corum, 821 S.W.2d 890, 891 (Mo. App. S.D. 1992) (citing State v. Stevens, 757

S.W.2d 229, 233 (Mo. App. E.D. 1988)); see also Section 577.041.1. But he contends that because he never said "no" to the trooper's request to take the test, he cannot be deemed to have refused. We disagree. "[R]efusal to take a breath test . . . occurs when the person under arrest is requested to take the test but declines to do so of his own volition." State v. Foster, 959 S.W.2d 143, 147 (Mo. App. S.D. 1998). The person need not say "I refuse" or physically refuse to blow into the machine. Id. "A refusal can also occur *by remaining silent*." Id. (emphasis added). Here, despite initially indicating that the trooper could do whatever he wanted, Caines remained silent in response to the trooper's follow-up questions trying to clarify his answer. And Caines never took the test. His silence and inaction demonstrate his refusal.

Caines's remaining arguments all amount to attempts to explain or mitigate the evidence offered against him: the odor of alcohol is not necessarily indicative of intoxication; his eyes may have been bloodshot because he was wearing costume makeup; his speech may have sounded slurred to the trooper because of his accent; lights flashing on the side of his face affected his performance on the horizontal gaze nystagmus test; his hip problems interfered with the one-leg stand test; he successfully completed the alphabet and, for the most part, the counting test; his behavior at the police station was remote in time from the driving. It is not our role, however, to weigh anew the evidence offered at trial. State v. Knifong, 53 S.W.3d 188, 194 (Mo. App. W.D. 2001). Rather, we must accept as true all evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary. Gittemeier, 400 S.W.3d at 841. Caines's explanations are not such logical extensions of the evidence that we can say the jury should have considered them. See Knifong, 53 S.W.3d at 194.

Moreover, although any one of these facts standing alone may have been "slim support" for his conviction, taken together and combined with his refusal to take the breathalyzer, their

5

cumulative effect is more than enough evidence of intoxication. State v. Pike, 162 S.W.3d 464, 473 (Mo. banc 2005). Even in the absence of definitive blood alcohol content evidence, intoxication can be shown by "the [defendant's] physical manifestations of intoxication, such as bloodshot eyes and slurred speech, and through a defendant's difficulty performing the field sobriety tests." Gittemeier, 400 S.W.3d at 841-42. Thus, we have repeatedly found evidence similar to this case sufficient to support a conviction for driving while intoxicated. See, e.g., State v. Rose, 86 S.W.3d 90, 105-06 (Mo. App. W.D. 2002) (strong smell of alcohol, glassy eyes, three failed field sobriety tests, admission to consuming alcohol and refusal to submit to breath exam sufficient to establish intoxication); Knifong, 53 S.W.3d at 194 (smell of alcohol, watery and bloodshot eyes, slurred speech, difficulty performing field sobriety tests, conduct during stop and at booking station, admission to consuming alcohol with antidepressant and refusal to submit to breathalyzer sufficient to establish intoxication).

Point I is denied.

In Point II, Caines claims that the trial court erred in overruling his objection to the portion of the State's closing argument suggesting he had been at a party drinking the night before. We disagree. "The trial court has broad discretion in controlling the scope of closing argument, and the court's ruling will only be reversed upon a showing of abuse of discretion resulting in prejudice to the defendant." State v. Martin, 103 S.W.3d 255, 264 (Mo. App. W.D. 2003). The State may not argue facts outside the record, but is allowed to argue the reasonable inferences from the evidence. Id.; State v. McFadden, 391 S.W.3d 408, 421 (Mo. banc 2013).

Here, it was a perfectly reasonable inference from the facts that were in evidence that Caines had been at a party drinking the night before—it was early on a Sunday Halloween morning, Caines was in costume, he admitted to having had a drink earlier in the night and he

was acting intoxicated. Caines claims on appeal that he could "just as easily" have been on his way to a Halloween event dressed as Dracula at 6 a.m. on Sunday morning. Even if that was also a reasonable inference—which we doubt given the dearth of evidence that Caines was an early-rising trick-or-treater—that does not render it improper for the State to have argued a different, but equally reasonable, inference. Nor are we persuaded by Caines's argument that the State's use of the adverb "probably" rendered this reasonable inference a prejudicial argument of facts outside the record. The trial court did not abuse its discretion in overruling Caines's objection. Even if it had, Caines is entitled to no relief because he cannot show that, given all of the evidence of intoxication, there is a reasonable probability that the verdict would have been different had his objection been sustained. See Martin, 103 S.W.3d at 264.

Point II is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Lawrence E. Mooney, P.J. and
Sherri B. Sullivan, J., concur.

7