JEFFREY W. BATES, J.-OPINION AUTHOR
Perry Tice (Defendant) was charged as an aggravated offender with the class C felony of driving while intoxicated (DWI). See §§ 577.010, 577.023.[1] A jury found Defendant guilty as charged, and the trial court imposed a four-year sentence.
Defendant presents two points, the first of which is dispositive. He contends the trial court abused its discretion in admitting the arresting officer's testimony about the results of an "improperly administered HGN test" because "an adequate foundation was not established[.]" We disagree and affirm.
"We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences." State v. Campbell , 122 S.W.3d 736, 737 (Mo. App. S.D. 2004) ; see State v. Johns , 34 S.W.3d 93, 103 (Mo. banc 2000). Viewed from that perspective, the following facts were before the trial court.
At around 1:15 a.m. on August 16, 2015, Neosho Police Officer William Ray Cliffman (Officer Cliffman) was patrolling when a Ford Ranger drove by, traveling 55 miles per hour in a location where the speed limit was 45 miles per hour. Officer Cliffman turned around and pulled over the truck. The truck pulled over into a Taco Bell parking lot, blocking traffic from passing. Because the truck was blocking traffic, Officer Cliffman told the driver of the truck to move to the other side of the business. Both the truck driver and Officer Cliffman parked their vehicles in a gravel lot on the other side of the Taco Bell.
Officer Cliffman approached the truck and learned that the driver was Defendant. The officer noticed that Defendant's speech was slurred, and when he tried to get out of the vehicle, he almost fell and had to catch himself by grabbing the door. Officer Cliffman also noticed that Defendant's eyes were bloodshot and watery. The officer asked Defendant where he had been, and Defendant told him "Buck's Place." Officer Cliffman knew that establishment was a bar outside of Neosho. Officer Cliffman asked Defendant whether he had anything to drink. Defendant said he had been drinking, but he did not know *561 how much he had. The officer asked Defendant to perform field sobriety tests, and Defendant agreed. Officer Cliffman then administered two field sobriety tests.
The first test was the horizontal gaze nystagmus (HGN), which is a test to show "nystagmus," i.e., involuntary twitching of the eyes while following a stimulus, indicating possible intoxication. There are six indicators or "clues" that are measured when performing this test. A score of four or more clues on the HGN test indicates possible intoxication. Defendant exhibited five of the six clues during the HGN test.
Although Officer Cliffman believed that Defendant was intoxicated after performing the HGN test, the officer also administered a second field sobriety test, the walk-and-turn test. There are eight possible clues in the walk-and-turn test. Out of the eight clues, Defendant exhibited six for the following actions: failing to maintain heel-to-toe stance; stopping while walking to steady himself; not touching heel-to-toe; losing balance while walking; using arms for balance; and taking an incorrect number of steps. Exhibiting six clues indicates possible intoxication. Because Defendant could not complete the walk-and-turn test, Officer Cliffman declined to give Defendant the one-leg-stand test. The officer was concerned that Defendant would fall and hurt himself.
Officer Cliffman then placed Defendant under arrest and transported him to the jail. During this transport, the officer smelled the odor of alcohol emanating from Defendant's body. Defendant was eventually charged with DWI.
Defendant filed a "Motion to Suppress Evidence of Standard Field Sobriety Tests."[2] Relying on State v. Browning , 458 S.W.3d 418, 424-30 (Mo. App. W.D. 2015), defense counsel argued that the results of the HGN test were inadmissible because Officer Cliffman failed to follow the National Highway Traffic Safety Administration (NHTSA) manual while administering the HGN test.
The court held an evidentiary hearing on the motion and received testimony from Officer Cliffman. He attended an eight-hour course in 2013 or 2014, at which he received specialized training in DWI detection. When he administered an HGN test, he used a card he called his "cheat sheet" to help him perform it correctly. He always followed all of the directions on the card. While administering the HGN test to Defendant, Officer Cliffman checked for the following in each eye: (1) equal tracking, pupil size, and resting nystagmus ; (2) lack of smooth pursuit; (3) distinct and sustained nystagmus at maximum deviation; (4) angle of onset; and (5) vertical nystagmus. When checking for nystagmus, the officer positions the stimulus 12 to 15 inches away from the face, just above the eyes. When checking for lack of smooth pursuit, he "might do it a couple times," but he couldn't remember whether or not he checked two different times on Defendant. Similarly, when checking for distinct and sustained nystagmus, and angle of onset, *562 Officer Cliffman checked for each at least once.
The trial court sustained Defendant's motion to suppress testimony about the HGN test results for the following reason:
The court has before it the Browning case, where Judge Witt [in the concurring opinion] spells out the steps from the [NHTSA] manual. It says this is to be-step 6 says this is to be repeated for each eye and compared. Step 7, the officer is to check each eye at least twice for this clue. Testimony today was he did not do it twice, so motion sustained.
The court opined that it could "take judicial notice" of the steps from Browning.[3]
At trial, during the cross-examination of Officer Cliffman, he mentioned the HGN test in response to a question from defense counsel. During a bench conference, the court decided that the question had invited the answer. The court changed its interlocutory ruling on the motion to suppress and decided to allow testimony about the HGN test results.[4]
On redirect, Officer Cliffman gave the following testimony about how he administered the HGN test to Defendant:
1. Before starting the HGN test, Officer Cliffman confirmed that Defendant's eyes tracked equally, had equal pupil size, and had no resting nystagmus. After performing the baseline tests, Officer Cliffman began the scored portion of the test.
2. He checked for lack of smooth pursuit. In order to test for lack of smooth pursuit, Officer Cliffman held his finger "12 to 15 inches" in front of Defendant's face and watched Defendant's eyes as they followed his finger for two seconds going out and two seconds going back in. Officer Cliffman performed this test for each eye. Defendant exhibited lack of smooth pursuit in both eyes.
3. He checked for distinct and sustained nystagmus. In order to perform this part of the test, Officer Cliffman moved his finger out and held for four seconds, watching Defendant's eyes as they moved toward the outside and held the gaze. Officer Cliffman noticed that Defendant exhibited distinct nystagmus at maximum deviation.
4. Officer Cliffman then looked for onset of nystagmus before 45 degrees, which required that Defendant move his eyes for four seconds to reach 45 degrees. Defendant exhibited onset before 45 degrees in his right eye but not in his left.
*563 5. A score of four or more clues on the HGN test indicate possible intoxication, and Defendant exhibited five of six possible clues.
Officer Cliffman testified that his HGN "cheat sheet" card was a summary given to him as part of his training. Although he was aware of the NHTSA manual, he did not receive one. Neither Officer Cliffman's "cheat sheet" nor the NHTSA manual was admitted in evidence during the trial.
Defense counsel conducted a thorough cross-examination of Officer Cliffman about the HGN test and addressed alleged deficiencies in that test during closing argument.[5] After the jury's guilty verdict, Defendant was sentenced by the court. This appeal followed.
In Point 1, Defendant contends the trial court erred in reversing its ruling on the motion to suppress and in admitting evidence about the HGN test results at trial. An appellate court considers the evidence presented at the suppression hearing and at trial in determining whether the motion should have been granted. State v. Edwards , 116 S.W.3d 511, 530 (Mo. banc 2003). A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. State v. Winfrey , 337 S.W.3d 1, 5 (Mo. banc 2011). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." Id. ; State v. Smith , 330 S.W.3d 548, 553 (Mo. App. S.D. 2010). Moreover, this Court reviews for prejudice, not mere error. Winfrey , 337 S.W.3d at 5. "Errors in admitting evidence require reversal only when prejudicial to the point that they are outcome-determinative." State v. Johnson , 207 S.W.3d 24, 42 (Mo. banc 2006). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." State v. Black , 50 S.W.3d 778, 786 (Mo. banc 2001) ; Johnson , 207 S.W.3d at 42 ; Browning , 458 S.W.3d at 420-21.
Defendant's point challenges the adequacy of the foundation for admission of the HGN test results.[6] "The foundation to admit HGN results is twofold: (1) the officer was adequately trained (eight or more hours) to perform and interpret the test; and (2) the test was properly administered." State v. Johnson , 488 S.W.3d 770, 771 (Mo. App. S.D. 2016). "[A]dequate training consists of a minimum of eight hours of police training on how to administer and interpret the HGN test." State v. Hill , 865 S.W.2d 702, 704 (Mo. App. W.D. 1993).[7] As set forth in Hill , proper administration of the HGN test requires the following:
(1) that the test be conducted by requiring a suspect to follow an object such as *564 a finger, pencil or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision, and (2) that the indicators be interpreted and scored, one eye at a time, as follows: (a) the person administering the test is to observe how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol; (b) the person administering the test is to observe whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol; and (c) the person administering the test is to observe the angle at which nystagmus occurs. Nystagmus occurring at or before the eye is looking at a 45-degree angle is indicative of the influence of alcohol. One point is scored for eye movement indicative of alcohol influence for each of the three tests for each eye. The highest possible score is six points, with a score of four or more points constituting substantial evidence that a suspect is intoxicated.
Hill , 865 S.W.2d at 704.
According to Defendant, "an adequate foundation was not established to permit admission of Officer Cliffman's testimony about the results of the HGN test because [he] materially deviated from NHTSA procedures for administering the HGN test by failing to test [Defendant's] eyes twice for each HGN indicator[.]"[8] We find no merit in this argument.
In State v. Burks , 373 S.W.3d 1 (Mo. App. S.D. 2012), this Court rejected a similar argument that the trial court abused its discretion in admitting results of the HGN test because "there was no foundation for the admission of this testimony because the instructions given by [the arresting officer] were not in accord with the NHTSA guidelines." Id. at 6. After reviewing the officer's testimony, we held that an adequate foundation had been laid based upon State v. Rose , 86 S.W.3d 90, 98-99 (Mo. App. W.D. 2002) (setting out the requisite steps involved in the proper administration of an HGN test), and Hill , 865 S.W.2d at 704 (containing the same explanation of what constitutes proper administration of an HGN test). Burks , 373 S.W.3d at 6-7. We also noted that, while defense counsel claimed the NHTSA guidelines were not followed, no evidence to that effect was presented. Id. We reach the same conclusion here. Officer Cliffman testified that he had received the requisite eight hours of training. During his testimony, he also explained in detail how he administered the HGN test to Defendant and the observations that were made during each phase of the test. Like Burks , this testimony was sufficient to show that Officer Cliffman properly administered the HGN field sobriety test in this case. See Burks , 373 S.W.3d at 6-7 ; Rose , 86 S.W.3d at 98-99 ; Hill , 865 S.W.2d at 704. Thus, the trial court did not abuse its discretion in admitting testimony about the HGN test results. Because the NHTSA guidelines were not admitted in evidence, there is no evidentiary basis for Defendant's argument that Officer Cliffman "materially deviated from the NHTSA procedures" by failing to test twice. See *565 Burks , 373 S.W.3d at 6-7 ; Johnson , 488 S.W.3d at 772.[9]
Finally, it is important to note that Defendant challenges the admissibility of the HGN test results, not the sufficiency of the evidence to support his conviction. As noted above, only outcome-determinative errors in the admission of evidence are prejudicial. Black , 50 S.W.3d at 786. Based on our review of the record, there was ample non-HGN evidence to support the jury's decision that Defendant was intoxicated. That evidence includes the following: (1) Defendant was stopped at around 1:15 a.m. because he was speeding; (2) when Defendant pulled over, he blocked traffic; (3) his speech was slurred; (4) when he tried to get out of the vehicle, he almost fell and had to catch himself by grabbing the door; (5) Defendant's eyes were bloodshot and watery; (6) Defendant said he was coming from "Buck's Place," which Officer Cliffman knew was a bar; (7) Defendant admitted to drinking alcohol but did not know how much he had to drink; (8) he failed the walk-and-turn test by failing to maintain heel-to-toe stance, stopping while walking to steady himself, not touching heel-to-toe, losing balance while walking, using arms for balance, and taking an incorrect number of steps; (9) because Defendant could not complete the walk-and-turn test, Officer Cliffman declined to give him the one-leg-stand test, concerned that Defendant would fall and hurt himself; and (10) the officer also smelled the odor of alcohol emanating from Defendant's body. In sum, there is no reasonable probability that the jury would have acquitted Defendant, but for the admission of the HGN testimony. See id. Therefore, even if the trial court did err, Defendant cannot show the requisite prejudice. Point 1 is denied, and Point 2 is moot.[10]
The judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCUR
WILLIAM W. FRANCIS, JR., J.-CONCUR

All statutory references are to RSMo Noncum. Supp. (2014), unless otherwise specified.

"The suppression of evidence is not the same thing as the exclusion of evidence on the basis of some rule of evidence. Suppression is a term used for evidence which is not objectionable as violating any rule of evidence, but which has been illegally obtained." State v. Burns , 339 S.W.3d 570, 571 (Mo. App. W.D. 2011) (internal quotation marks and citations omitted). Here, because Defendant was seeking to exclude the results of the HGN test based upon the rule of evidence requiring a proper foundation, not that it had been illegally obtained, his motion was inappropriately titled as a motion to suppress and more aptly could have been titled as a motion in limine. See id. Nevertheless, because all parties and the trial court referred to this motion as denominated by Defendant, we will do likewise in this opinion for consistency and ease of reference.

In Browning , the NHTSA manual was admitted and thus a part of the trial court record. Id. at 424. Here, the NHTSA manual was not admitted at the suppression hearing or the trial. The majority opinion in Browning held that, "assuming the trial court committed error in the admission of this evidence," the alleged error was "not prejudicial as it [was] not outcome-determinative." Id. at 421-22. The references in the majority and concurring opinions about HGN foundation requirements (id. at 421 n.3 and 424 ) were not necessary to the holding and are dicta. See State ex rel. Anderson v. Hostetter , 346 Mo. 249, 140 S.W.2d 21, 24 (Mo. banc 1940) (holding "expressions of opinion, not in anywise necessary for the actual decision ... before the court" must be considered obiter dicta); In re Estate of Lambur , 397 S.W.3d 54, 63 n.11 (Mo. App. S.D. 2013) (same holding); Richardson v. QuikTrip Corp. , 81 S.W.3d 54, 59 (Mo. App. W.D. 2002) (defining dicta as statements that are not essential to the court's decision of the issue before it).

During the bench conference, the judge explained that, after reviewing the case law further, he had concluded that the HGN test results were admissible and that the issues raised by defense counsel went to the weight of the evidence.

During deliberations, the jury asked two questions concerning the walk-and-turn test only: "What was the score of the walk and turn? What does the law consider failing?" The trial court explained that it was not allowed to respond, but to follow the court's instructions. Twenty minutes later, the jury returned its verdict of guilty.

To the extent that the trial court granted Defendant's motion to suppress the HGN testimony, a ruling on such a motion "is interlocutory and subject to modification at trial." State v. Blurton , 484 S.W.3d 758, 775 (Mo. banc 2016). The record demonstrates that the trial court reconsidered its interlocutory ruling and decided the HGN test results were admissible.

Hill was overruled on other grounds by State v. Carson , 941 S.W.2d 518, 523 (Mo. banc 1997).

Defendant's point also argues Officer Cliffman "materially deviated from the NHTSA procedures ... by failing to place the stimulus at the proper distance from [Defendant's] face ... 12 to 15 inches." Given our standard of review, however, this argument is clearly refuted by the record, as Officer Cliffman testified that he positioned the stimulus-his finger "12 to 15 inches" in front of Defendant's face, "just a little above the eye[.]"

It is well settled that relevant NHTSA records like reports and publications are admissible pursuant to § 490.220 RSMo (2000). See Rodriguez v. Suzuki Motor Corp. , 996 S.W.2d 47, 55-56 (Mo. banc 1999) (holding that a NHTSA report concerning vehicle rollovers was properly admitted pursuant to § 490.220 ); Porter v. Dir. of Revenue , 168 S.W.3d 147, 151 (Mo. App. S.D. 2005) (holding that the NHTSA manual was properly admitted to determine whether the arresting officer correctly performed the walk-and-turn field sobriety test); Eltiste v. Ford Motor Co. , 167 S.W.3d 742, 747-48 (Mo. App. E.D. 2005) (holding that relevant NHTSA reports concerning sudden vehicle acceleration were properly admitted pursuant to § 490.220 ).

Defendant's second point contends defense counsel did not open the door to the admission of the HGN test results. Given our disposition of Point 1, it is unnecessary to address Point 2.