

# Missouri Court of Appeals

## Southern District

### Division One

THOMAS MICHAEL CERUTTI, )
)
    Petitioner-Respondent, )
)
    v. ) No. SD36355
)
DIRECTOR OF REVENUE, STATE OF ) Filed: June 5, 2020
MISSOURI, )
)
    Respondent-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Patrick Horsefield, Associate Circuit Judge

**REVERSED AND REMANDED**

The Director of Revenue (the "Director") suspended the driving privileges of

Thomas Michael Cerutti ("Cerutti") under section 302.505.1.[1] Cerutti requested a trial *de

novo* and, following a trial, the trial court found that the Director failed to establish

Cerutti was arrested on probable cause to believe he had committed an alcohol-related

offense. The Director appeals claiming that the trial court misapplied the law because the

historical facts found by the trial court establish probable cause as a matter of law. We

---

[1] Unless otherwise indicated, all references to statutes are to RSMo 2016, and all references to rules are to Missouri Court Rules (2020).

1

find merit in the Director's claim, and reverse and remand the trial court's judgment with the direction to affirm the suspension of Cerutti's driving privileges.

## Standard of Review

In an appeal from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *White v. Director of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (internal citation omitted). While no deference is owed to the final probable cause determination, this Court should defer to the facts found by the trial court, applying the law anew to those facts. *Id.* at 310. Our review of the trial court's application of the law to the historical facts found by it is *de novo*. *Southards v. Director of Revenue*, 321 S.W.3d 458, 461 (Mo.App. S.D. 2010).

## Historical Facts as Found by the Trial Court

The trial court made the following findings of fact in its judgment:

> On September 6, 2018, at approximately 8:01 p.m., Trooper Barclay received a complaint of careless and imprudent driving on Interstate 44 near the eastbound 205 mile marker. The report referenced a vehicle that was described as a black Jeep Grand Cherokee that was reportedly tailgating and speeding, and a license plate number was provided. The trooper subsequently observed the vehicle near the 213 mile marker, and began pacing it. He observed that the vehicle was traveling at a rate of 78 miles per hour in a 70 mile-per-hour zone. Trooper Barclay further observed the vehicle driving in the left lane while not passing, observed the vehicle drive onto the left shoulder, and then observed the vehicle move to the right lane without signaling. Trooper Barclay initiated a traffic stop on the vehicle and the driver stopped without difficulty at the 216.8 mile marker.
> At approximately 8:10 p.m., the trooper made contact with the driver of the vehicle and requested his license and insurance documentation, which the driver provided without difficulty. Trooper Barclay identified the driver by his Missouri Driver License as Thomas Cerutti. Trooper Barclay indicated he could smell a moderate odor of

intoxicants coming from inside the vehicle, . . . and [noted] that [Mr. Cerutti's] eyes were watery, bloodshot, and glassy. ["Mr. Cerutti's speech was not slurred."] He requested Mr. Cerutti exit the vehicle and sit in his patrol vehicle. Mr. Cerutti was cooperative and complied, accompanying Trooper Barclay to his patrol vehicle without difficulty. Trooper Barclay noted an open 25 fluid ounce can of Bud Light in the cup holder of the driver's door pocket of Mr. Cerutti's vehicle. Trooper Barclay did no further investigation of the can and did not check to see if it was cold to the touch or if there was any liquid in the can.

While seated in the patrol vehicle, Cerutti stated, without being asked, that he had had a Blue Moon draft in a town at the next exit past Rolla at a bar called Sydney's. He also told Trooper Barclay that he had been texting as an explanation for speeding, driving onto the left shoulder and not signaling when switching lanes.

The trooper asked Cerutti if he would perform field sobriety tests, and Mr. Cerutti agreed to do so. The trooper performed the horizontal gaze nystagmus test. At trial, [the Director] stipulated that the Court should not consider the results of that test, and this Court therefore does not consider those results. Trooper Barclay then performed alphabet and reverse counting tests, and Mr. Cerutti completed the alphabet test "perfect" according to Trooper Barclay and made no mistakes on the reverse counting test. The Trooper next requested Mr. Cerutti to submit to a preliminary breath test by blowing into a handheld portable breath testing instrument, and Mr. Cerutti refused to do so stating he had been instructed not to blow into a portable breath test instrument by a friend who was a law enforcement officer. Trooper Barclay told Mr. Cerutti that based on what he saw in his eyes during the horizontal gaze nystagmus test (which again [the Director] stipulated the results of which should not be considered by this Court) Mr. Cerutti "was right there on the line" and if Mr. Cerutti did not take the preliminary breath test, he would arrest him and take him to the next town and get a breath sample there. Cerutti again refused to take the preliminary breath test.

The trooper then placed Mr. Cerutti under arrest for driving while intoxicated and transported him to the Cuba Police Department. The trooper read Mr. Cerutti Implied Consent from the alcohol influence report, and Mr. Cerutti agreed to submit to a breath test. Mr. Cerutti performed the breath test using an Intox DMT.

. . . Form # 11 [("Blood Alcohol Test Report")] shows that [Mr. Cerutti] had a blood alcohol content of .125%.

The trial court then concluded that "[t]his Court finds that there was not probable cause to arrest Mr. Cerutti for driving while intoxicated, based upon the totality of the circumstances," and

3

[u]pon due consideration of all the evidence and considering the totality of the circumstances which includes evidence that weighs against reasonable grounds to believe Mr. Cerutti was driving while intoxicated, this Court finds that the Director failed to meet its burden to prove by a preponderance of the evidence that [Mr. Cerutti] was arrested upon probable cause to believe that he had committed an alcohol-related traffic offense.

The "evidence that weigh[ed] against reasonable grounds to believe Mr. Cerutti was driving while intoxicated" included Cerutti's innocent explanation to explain his behavior (i.e., speeding, and driving erratically because he was texting); Cerutti's failure to exhibit impaired physical movements (i.e., "no difficulty pulling over, providing his license and insurance information, following directions or maintaining balance as he exited his vehicle and walked to the trooper's vehicle"); and Cerutti's proper performance of an "alphabet test and counting test." The trial court ordered the Director to reinstate Cerutti's driving privileges.

*Merits of Claim that the Trial Court Misapplied the Law*

Section 302.505.1 in relevant part provides: "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight . . . ." To support the suspension or revocation of a person's license in a trial de novo before the circuit court, the Director must establish by a preponderance of the evidence that (1) the person was arrested on probable cause to believe the person was driving a motor vehicle and thereby committing an alcohol-related offense, and (2) the person's relevant alcohol concentration was "eight-hundredths of one percent or more by weight." Sections 302.505.1 and 302.535.1; *White*, 321 S.W.3d at 304 n.4, 309 n.11.

4

Probable cause:

"will exist when a police officer observes unusual or illegal operation of a motor vehicle and observes indicia of intoxication on coming into contact with the motorist. Probable cause, for purposes of section 302.505, will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed. The level of proof necessary to show probable cause under section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt. There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt. The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer."

*Srader v. Director of Revenue*, 525 S.W.3d 600, 603-04 (Mo.App. W.D. 2017) (quoting

*White*, 321 S.W.3d at 309 (internal quotations and citations omitted)). Further:

Whether probable cause exists depends on information in the officer's possession prior to the arrest.
"There is no precise test for determining whether probable cause exists; rather it is based on the particular facts and circumstances of the individual case." Probable cause is a "fluid concept" with no exact definition; it turns on the assessment of probabilities in particular factual contexts. Although there must be a "fair probability" that a particular offense has been committed, probable cause "does not demand any showing that such a belief be correct or more likely true than false."

*Southards*, 321 S.W.3d at 462 (internal citations omitted).

In this case, the trial court found the following facts occurred before Trooper Barclay arrested Cerutti:

1. Trooper Barclay received a report that a vehicle was "tailgating and speeding" on Interstate 44 (the report included a description of the vehicle and the vehicle's license plate number);[2]

---

[2] In Missouri, established law

provides it is not necessary for the officer to observe the person driving the vehicle in order to create the requisite probable cause under Section 302.505.1. Rather, the officer may rely on information received from police dispatch or civilian witnesses, and such

5

2. Less than ten minutes later, Trooper Barclay personally observed the vehicle traveling "78 miles per hour in a 70 mile-per-hour zone," "driving in the left lane while not passing," "drive onto the left shoulder," and "then . . . move to the right lane without signaling;"

3. Cerutti stopped the vehicle and provided his license and insurance "without difficulty;"

4. Trooper Barclay "could smell a moderate odor of intoxicants coming from inside the vehicle," and Cerutti's eyes "were watery, bloodshot, and glassy." Cerutti's speech was not slurred. Trooper Barclay also noted "an open 25 fluid ounce can of Bud Light in the cup holder of the driver's door pocket;"

5. Cerutti was "cooperative" and accompanied Trooper Barclay to his patrol vehicle "without difficulty;"

6. Without being asked, Cerutti stated that "he had had a Blue Moon draft in a town at the next exit past Rolla at a bar called Sydney's;"

7. Cerutti successfully performed "alphabet and reverse counting tests;" and

8. Cerutti declined to submit to a preliminary breath test.[3]

These historical facts found by the trial court establish probable cause as a matter of law because these facts would demonstrate to the senses of a prudent, cautious, and trained police officer a fair probability that Cerutti was driving with an alcohol concentration in his blood, breath, or urine of .08% or more by weight. Alternate,

---

third-party statements are in general admissible to establish probable cause, even though they are hearsay.

*Tweedy v. Director of Revenue*, 412 S.W.3d 389, 395 (Mo.App. E.D. 2013) (internal citations omitted).

[3] Refusal to submit to a preliminary breath test is properly admissible on the issue of probable cause. *State v. Burks*, 373 S.W.3d 1, 7-8 (Mo.App. S.D. 2012).

innocent explanations for Cerutti's behavior and Trooper Barclay's observations do not negate probable cause, but rather go to the ultimate issue of whether Cerutti's alcohol concentration in his blood, breath, or urine was .08% or more by weight. *Srader*, 525 S.W.3d at 604 n.5. Likewise, the fact that Cerutti did not exhibit every indicia of intoxication does not negate the probative value in establishing probable cause of the indicia of intoxication that were present. *See Velluto v. Director of Revenue*, 383 S.W.3d 14, 18 (Mo.App. E.D. 2012) ("Field Sobriety tests are not a requirement for an officer to develop reasonable grounds that a person is driving under the influence, but rather only supplement the officer's other observations when considering probable cause.").

The trial court misapplied the law because the historical facts it found established probable cause as a matter of law.[4] The trial court's judgment is reversed and remanded with the direction to affirm the suspension of Cerutti's driving privileges.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs

---

[4] Cerutti argues in his brief and Director acknowledged in his reply brief, the Director's point relied on, as written, is multifarious. Multifarious points fail to comply with Rule 84.04(d). *City of Aurora v. Spectra Communications Group, LLC*, 592 S.W.3d 764, 795 n.20 (Mo. banc 2019). An appellate court has discretion to review multifarious points on the merits. *Id.* Though poorly worded, the point relied on alerted Cerutti to the Director's claim that the factual findings as found by the trial court sufficed as a matter of law as probable cause. Cerutti's motion to strike the Director's brief and dismiss the appeal for its multifarious point is denied.