Cynthia L. Martin, Judge
Gary Browning (“Browning”) appeals his conviction of driving while intoxicated as an aggravated offender following a jury trial. He complains that there was insufficient foundation to permit the admission of Sergeant Joe Kantola’s (“Sgt. Kantola”) testimony about the results of administration of the horizontal gaze nystagmus (“HGN”) test. Browning also questions the adequacy of the approved verdict director for driving while intoxicated, MAI-CR 3d 331.02, though he concedes that the trial court committed no error in tendering the instruction. Because any error in the admission of the results of the HGN test is not prejudicial in light of other evidence supporting the verdict as to which Browning has no complaint, and because Browning asserts no error in the trial court’s use of MAI-CR 3d 331.02, we affirm.
Factual and Procedural Background
Browning does not challenge the sufficiency of the evidence to sustain his conviction. Viewed in the light most favorable to the conviction,[1] the following evidence was presented to the jury:
On Sunday, April 22, 2007 at around 10:15 p.m., Sgt. Kantola of the Kearney Police Department was stopped in an unmarked patrol vehicle at a red light at the intersection of 92 Highway and Interstate 35. Sgt. Kantola was in the right lane, and a minivan was stopped next to him in the left lane. Sgt. Kantola observed a black Jeep approaching the minivan quickly from behind, without appearing to slow down. The Jeep then came to a sudden stop. When the light turned green, all three vehicles proceeded through the in *420 tersection. The Jeep passed Sgt. Kantola, following the minivan too closely. The Jeep suddenly entered Sgt. Kantola’s lane without using its turn, signal. The Jeep accelerated past the minivan, then suddenly went back into the left lane without using its turn signal. At the time, the Jeep was traveling over the posted 35 mile-per-hour speed limit. The Jeep then turned east onto 33 Highway without using its turn signal.
Because Sgt. Kantola had witnessed multiple traffic offenses, he followed the Jeep, and activated his emergency lights. The Jeep slowed down, but did not stop immediately.
Sgt. Kantola approached' the Jeep. Browning was driving, and was the sole occupant. Before Browning spoke, Sgt. Kantola could smell an “overpowering” odor of alcohol from Browning’s breath. When Browning did speak, his speech was slurred. Browning’s eyes were glassy and bloodshot. His pupils were dilated. Sgt. Kantola asked Browning if he had been drinking. Browning responded that he “drank some earlier.” Browning was asked to get out of the car. As Browning did so, he stumbled and used the door to support himself.
Sgt. Kantola administered several field sobriety tests. He administered the HGN test, the walk-and-turn test, and the one-legged stand test. According to Kantola, Browning showed all six signs of intoxication during the HGN test, and also swayed while balancing during the test. Browning showed four of the eight signs of intoxication during the walk-and-turn test, with two being required to demonstrate intoxication. Browning showed all four signs of intoxication during the one-legged-stand test. Browning also submitted to a portable breath test, which was positive for the presence of alcohol. At that point, Browning was placed under arrest. He began pleading with Sgt. Kantola, “Please don’t do this to me.”
After being transported to the police station and advised of the implied consent law, Browning agreed to submit to a breath test. Browning’s blood alcohol content was .103.
Browning was convicted of driving while intoxicated following a jury trial. The court imposed a four-year sentence, but suspended the sentence and placed Browning on probation. Browning filed this timely appeal.
Analysis
Browning’s first point on appeal argues that the trial court abused its discretion in admitting Sgt. Kantola’s testimony regarding the results of the HGN test over Browning’s objection. Browning claims that an adequate foundation was not established to permit admission of the testimony. Browning raised this same issue in a pre-trial motion to suppress which was denied by the trial court following an evi-dentiary hearing.
We review a trial court’s decision regarding the admission of evidence for an abuse of discretion. State v. Prince, 311 S.W.3d 327, 335 (Mo.App.W.D.2010). We will not find an abuse of discretion unless a trial court’s ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to indicate a lack of careful consideration. State v. Brown, 939 S.W.2d 882, 883 (Mo. banc 1997). We will not reverse a conviction based on the erroneous admission of evidence unless prejudice is demonstrated, established by proof that the admission of the evidence was “outcome-determinative.” State v. Adams, 350 S.W.3d 864, 866 (Mo.App.E.D.2011) (citing State v. Johnson, 207 S.W.3d 24, 42 (Mo. banc 2006)). “ ‘A finding of outcome-determinative prejudice *421 expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence.’” Adams, 350 S.W.3d at 866 (quoting Johnson, 207 S.W.3d at 42).
Here, Browning only challenges about the trial court’s admission of Sgt. Kantola’s testimony regarding the results of the HGN field sobriety test. Browning does not challenge the admission of Sgt. Kanto-la’s testimony regarding Browning’s erratic driving and about the physical signs of intoxication he observed immediately upon approaching Browning including the smell of alcohol, bloodshot and glassy eyes, dilated pupils, slurred speech, and problems with balance. Browning does not challenge the admission of Sgt. Kantola’s testimony that Browning acknowledged he had been drinking. Browning does not challenge the admission of Sgt. Kantola’s testimony regarding the results of the walk- and-turn and the one-legged stand tests, the results of the portable breath test, or the results of the breath test which demonstrated that Browning had a blood alcohol content of .103, well in excess of the presumptive level of intoxication set forth in section 577.037.1.[2] Browning does not challenge the admission of Sgt. Kantola’s testimony about Browning’s plea that he not be arrested.
Given all of this unchallenged evidence, the sufficiency of which to support his conviction Browning admits, there is no reasonable probability that the jury would have acquitted Browning but for the trial court’s admission of Sgt. Kantola’s testimony about the results of the HGN test. Thus, even assuming the trial court committed error in the admission of this evidence, that error is not prejudicial as it is not outcome-determinative, and the error will not support the reversal of Browning’s conviction.[3]
*423 Browning’s first point on appeal is denied.
Browning’s second point on appeal does not claim trial court error, but instead questions whether the time is ripe for the Supreme Court to re-evaluate the adequacy of MAI-CR 3d 331.02, the approved verdict director for driving while intoxicated. At trial, Browning tendered a modified verdict director that added an essential element,[4] and a definition of “intoxicated condition,”[5] neither of which appear in MAI-CR 3d 331.02. The tendered verdict director was refused. Browning’s point relied on acknowledges that the trial court did not commit error in refusing the tendered instruction.[6]
Browning queries, however, whether it would be “prudent” to define the term “intoxicated condition” in the approved verdict director,[7] citing dicta to that effect in State v. Brightman, 388 S.W.3d 192 (Mo.App.W.D.2012). He asks in his Brief: “Has the time now come to reconsider this issue?” [Appellant’s Brief, p. 25] Browning acknowledges that binding precedent on this issue relegates his query to the exclusive province of the Supreme Court. [Appellant’s Brief, p. 3] See State v. Schroeder, 330 S.W.3d 468, 475 (Mo. banc 2011) (holding that “ordinary persons understand what is meant by the term[] ‘intoxicated condition,’ ” negating any need for a definition in MAI-CR 3d 331.02).
Because Browning claims no error in the trial court’s use of the approved verdict director for driving while intoxicated, there is nothing for this court to review. Rule 84.04(d)(1).
Browning’s second point on appeal is denied. ,
Mitchell, Presiding Judge, joins in the majority opinion.
Witt, Judge, joins in the majority’s result and concurs in separate opinion.

. "We view the facts in the light most favorable to the jury's verdict.” State v. Jackson, 410 S.W.3d 204, 209 n.3 (Mo.App.W.D.2013).

. All statutory references as to RSMo 2000 as supplemented.

. Though we need not decide whether the trial court erroneously admitted Sgt. Kanto-la’s testimony about the results of the HGN test, Browning’s challenge to the testimony raises a legitimate concern. The HGN test, unlike other standard field sobriety tests, is an exclusively scientific test. "Nystagmus is the involuntary jerking of the eyes.” State v. Hill, 865 S.W.2d 702, 704 (Mo.App.W.D.1993) (overruled on other grounds by State v. Carson, 941 S.W.2d 518, 520 (Mo. banc 1997)). Nystagmus, though involuntary, has many potential causes. The ability to reliably differentiate between these causes to permit the conclusion that nystagmus suggests intoxication requires scientific testing. It is for this reason that proponents of the HGN test were required to establish the test's scientific reliability under the Frye test. Hill, 865 S.W.2d at 704 (citing Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923)).
Because of its inherently scientific nature, Missouri courts have conditioned the admissibility of testimony about the HGN test on establishing two foundational requirements: (1) that the officer administering the test is adequately trained on how to administer and interpret the test, and (2) that the test is properly administered. Hill, 865 S.W.2d at 704 (emphasis added); State v. Ostdiek, 351 S.W.3d 758, 771 (Mo.App.W.D.2011). ”[A]d-equate training consists of a minimum of eight hours of police training on how to administer and interpret the HGN test.” Hill, 865 S.W.2d at 704; State v. Fose, 86 S.W.3d 90, 98 (Mo.App.W.D.2002).
"Proper administration of the HGN test requires (1) that the test be conducted by requiring a suspect to follow an object such as a finger, pencil or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect’s vision, and (2) that the indicators be interpreted and scored, one eye at a time, as follows; (a) the person administering the test is to observe how smoothly a suspect follows the object as it is moved to the periphery of the suspect’s vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates *422 the influence of alcohol; (b) the person administering the test is to observe whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol; and (c) the person administering the test is to observe the angle at which nystag-mus occurs. Nystagmus occurring at or before the eye is looking at a 45-degree angle is indicative of the influence of alcohol. One point is scored for eye movement indicative of alcohol influence for each of the three tests for each eye. The highest possible score is six points, with a score of four or more points constituting substantial evidence that a suspect is intoxicated.” Hill, 865 S.W.2d at 704; see also Rose, 86 S.W.3d at 98-99.
When Hill was decided in 1993, the court gauged the "scientific reliability” of the HGN test based on the testimony of an expert who explained studies conducted "on behalf of the National Highway and Traffic Safety Administration (NHTSA) to determine the most accurate field sobriety tests available to police officers and to standardize the procedures for those tests.” 865 S.W.2d at 704 (emphasis added). One of the tests identified was the HGN test. Id. Hill’s articulation of the means by which foundation for admission of the HGN test results could be established was drawn directly from the testimony of the expert who explained these studies. Id.
The standardized procedures for administering the HGN test are thus specified in NHTSA’s DWI Detection & Standardized Field Sobriety Testing Manual ("NHTSA Manual”). The NHTSA Manual was first published in 1992, and has been revised several times over the years. However, with respect to the HGN test, the NHTSA Manual has always required: (i) that each eye be separately tested; and (ii) that each eye be tested twice. The three measurement points for the HGN test identified in Hill can each yield a "point,” with a total of three points possible for each eye. However, at least four points are required to suggest intoxication, necessarily requiring both eyes to be implicated by the testing. Rose, 86 S.W.3d at 98 ("Where ... a driver scores four or more points on the HGN, there is substantial evidence that the driver is intoxicated.”). Plainly, the scientific steps for administering the HGN test address how to properly gauge and calculate points— the accumulation of which is integral to the test’s ability to reliably gauge intoxication.
Sgt. Kantola testified about the manner in which he administered the HGN test. His testimony indicated that at least with respect to the smooth pursuit measurement aspect of the HGN test, he did not test each eye separately as directed by the NHTSA Manual. His testimony also conceded that he did not perform any of the measurement components of the test twice. Sgt. Kantola testified that he held his finger about 10 inches in front of Browning’s face when the NHTSA Manual requires a distance of 12 to 15 inches. Sgt. Kantola claimed that he administered the test the way he had been trained in 1993, and hinted that the NHTSA Manual had been changed since that time. However, it appears plain from Sgt. Kantola's testimony that his administration of the HGN test did not comply in at least some respects with standards that have been a part of eveiy version of the NHTSA Manual.
"Where the administering officer 'failed to substantially comply with proper testing procedures,’ most jurisdictions would ‘treat this issue as affecting the weight of HGN evidence rather than its admissibility.’ ” Rose, 86 S.W.3d at 99, n.6 (citing Ballard v. State, 955 P.2d 931, 941 (Alaska App.1998)). "In Missouri, however, proper administration of the HGN test is a foundational requirement under Hill.". Id. (citing Duffy v. Director of Revenue, 966 S.W.2d 372, 379 (Mo.App.W.D.1998)).
In Duffy, the officer’s testimony indicated that he did not know how to score the HGN test. 966 S.W.2d at 378. The Department of Revenue argued that the officer conducted the “mechanics” of the test correctly such that his lack of exact knowledge as to how to score the test was somehow irrelevant. Id. We rejected that argument, noting that "probable cause refers to the quality and quantity of proof tending to establish a certain thing.” Id. (citation omitted). "Obviously, a scientific test as to intoxication, which is improperly administered ..., does not tend to prove intoxication under a probable cause or reasonable doubt standard.” Id. Accordingly, the trial court in Duffy erred in admitting the testimony for lack of foundation.
Given the holdings in Rose and Duffy, Sgt. Kantola's concessions about his administration of the HGN test raise legitimate concerns about whether he "properly administered” the HGN test, and thus about whether the trial court erred in admitting the test results. The State countered Browning’s claim of error by relying heavily on the holding in State v. Burks, 373 S.W.3d 1, 6-7 (Mo.App.S.D.2012), where the Southern District held that "challenges raised ... to the procedures fol *423 lowed by [an officer administering the HGN test] go to its weight, rather than to admissibility of the test results.” We question that holding. If applied in every case where an officer has failed to "properly administer” the HGN test, the holding in Burks will effectively swallow and negate the State’s burden to establish the foundational requirement that the HGN test was properly administered. It is true,' as Burks notes, that Hill did not expressly state that “the admission of HGN tests requires testimony from the officer that all of the NHTSA guidelines were followed during the administration of [the] test.” 373 S.W.3d at 6. However, there is no question that the NHTSA standards, and expert testimony about those standards, formed the basis for Hill's conclusion that the HGN test was "scientifically reliable,” and for Hill’s imposition of the burden on the State to establish that the test has been “properly administered” as a condition to its admissibility. There is no source to consult for determining whether the HGN test has been "proper administered” other than the NHTSA Manual. We believe, therefore, that consistent with the holdings in Duffy and Rose, material deviations from the testing procedures set forth in the NHTSA Manual will require a trial court to deny admission of HGN test results.

. Browning's tendered verdict director added as an essential element the jury was required to find that "his ability to drive was impaired.” This is not an element of the offense of driving while intoxicated as described in section 577.010.1.

. Browning sought' to define "intoxicated condition” as "under the influence of alcohol.”

. In State v. Schroeder, 330 S.W.3d 468, 475 (Mo. banc 2011), the Missouri Supreme Court considered and rejected the argument that the term “intoxicated condition” in MAI-CR 3d 331.02 should be defined.

. Browning's point on appeal does not address the fact that his tendered verdict director also sought to add an essential element to the approved verdict director.