

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
       )
     Respondent, )
       )
vs. )   No. SD33986
       )
SONNIE KORAN JOHNSON, )   FILED: May 11, 2016
       )
     Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

### Honorable J. Dan Conklin, Judge

### **AFFIRMED**

Sonnie Johnson appeals his chronic-offender DWI conviction, §§ 577.010, 577.023.1(2), claiming that (1) horizontal gaze nystagmus (HGN) test results were admitted without proper foundation; and (2) there was insufficient evidence of his intoxication apart from the HGN testimony.[1] We affirm the judgment.

---

[1] Statutory citations are to RSMo as amended through 2010. We decline to address an unpreserved point seeking a new trial on this and three related driving convictions because "[r]eview of the record does not reveal substantial grounds to believe that a manifest injustice or miscarriage of justice occurred." **State v. Mayes**, 281 S.W.3d 918, 921 (Mo.App. 2009).

## Applicable Legal Principles

"Intoxication sufficient to sustain a [DWI] conviction can be proved by any witness who had a reasonable opportunity to observe an alleged offender." ***State v. Williams***, 847 S.W.2d 111, 113 (Mo.App. 1992).

The foundation to admit HGN results is twofold: (1) the officer was adequately trained (eight or more hours) to perform and interpret the test; and (2) the test was properly administered. ***State v. Burks***, 373 S.W.3d 1, 6 (Mo.App. 2012).

We credit all evidence and reasonable inferences suggestive of Johnson's guilt, disregarding contrary evidence. ***State v. Rose***, 86 S.W.3d 90, 105 (Mo.App. 2002).

## Background

Per the record as we must view it, a night-patrol officer observed Johnson driving 55 to 60 m.p.h. on a 35 m.p.h. street. The officer turned and followed, saw Johnson's car weaving, and initiated a traffic stop.

Johnson was alone in the car. He could not produce a driver's license. His breath smelled strongly of alcohol. His eyes were glassy. He first claimed to have had "one drink," then "two drinks." Being asked to exit his vehicle for field sobriety tests, Johnson got out, placed his hands behind his back as if for handcuffs, and told the officer "I already know what you're going to do."

The officer had Johnson perform three NHTSA[2] field sobriety tests: HGN, walk-and-turn, and one-leg stand. Based on those results, including six of six

---

[2] National Highway Traffic Safety Administration. We refer to its HGN-testing protocol throughout this opinion.

2

intoxication indicators on the HGN test, Johnson was arrested and transported to the jail, where he refused to be breath-tested for blood alcohol.

Charged as a chronic DWI offender, Johnson waived a jury and was tried by the court. He did not testify. The sole witness was the arresting officer, who testified at length and without objection about his HGN test procedure and results.

After the State rested, the defense moved to strike the admitted HGN evidence based on a recent Western District case stating that material deviations from testing procedures in the NHTSA manual would require a trial court to exclude HGN test results. *See* ***State v. Browning***, 458 S.W.3d 418, 422 n.3 (Mo.App. 2015), discussed *infra.* Defense counsel told the court that the material deviation was "step one, check for eyeglasses." The court read the ***Browning*** opinion and reopened the case.

The officer was recalled and testified that Johnson was not wearing corrective lenses that night.[3] On cross-examination, the officer said he did not ask Johnson if

---

[3] We quote the officer's testimony:

> Q. When you did the [HGN] test on the night in question with Mr. Johnson, step one of the test the very first thing that you do when you're looking at someone, what is the first thing that you do before you administer the HGN test?
>
> A. Check to see if they've got any glasses or contacts in.
>
> Q. Now is it fairly obvious if someone has on glasses or not?
>
> A. Yes, ma'am.
>
> Q. And what about contacts?
>
> A. You're within such close proximity most of the time because of the general overall conditions you can tell -- see if someone's wearing glass -- or excuse me, wearing contacts. So I didn't ask him if he was wearing contacts 'cause I saw that he was not.

he was wearing glasses because the officer saw and knew Johnson wasn't. After taking the issue under advisement, the court refused to strike the HGN testimony, and further found that even without HGN proof, the evidence was sufficient to convict Johnson of DWI. Johnson challenges these two findings in Points I and II respectively; he must prevail on both points to win a reversal.

## Point I

This point posits that the officer "failed to comply with NHSTA [sic] standards by omitting to ask [Johnson] whether he was wearing eyeglasses or contact lenses, and strict compliance with the protocol is a condition of admission of the results."

Yet Johnson cannot prevail on his theory that NHTSA standards force officers to always ask certain questions – even when the answer is obvious or already known to the officer and is not disputed at trial or on appeal – because no NHTSA standards were made a part of our appellate record. This omission forecloses Point I and Johnson's reliance on *Browning*, which opined that "material deviations from the testing procedures *set forth in the NHTSA Manual* will require a trial court to deny admission of HGN test results." *Id*. at 423 n.3 (our emphasis).[4]

---

Q. And this may be a stupid question, but did you see whether he had eyeglasses on or not?

A. He was not wearing eyeglasses.

[4] This point would fail even if we assumed, *arguendo*, that Johnson's concern is still "step one, check for eyeglasses" as was stated at trial and as quoted in *Browning*'s concurring opinion as follows:

**Step I: Check for Eyeglasses.** Eyeglasses may impede the suspect's peripheral vision and may impede the officer's ability to observe the eye carefully. It does not matter whether the suspect can see the stimulus with "perfect clarity" as long as the suspect can see the stimulus at all because nystagmus is not a vision test.

**Point II**

The foregoing effectively moots Johnson's challenge to the sufficiency of the evidence *apart from the HGN test*, but this point would fail anyway. Case law supports the trial court's finding that non-HGN evidence alone showed Johnson's intoxication. *See, e.g.*, **State v. Knifong**, 53 S.W.3d 188, 193–94 (Mo.App. 2001) (driver's odor of alcohol, watery and bloodshot eyes, slurred speech, difficulty with field sobriety tests, and refusal to take breathalyzer was evidence supporting guilt).

**Postscript – *Browning*, *Burks*, and *Rose***

Having touched upon ***Browning***, we would be remiss not to allay that court's concern that in ***Burks***, we said HGN test procedure challenges went to the "'weight, rather than to admissibility of the test results.'" *See **Browning***, 458 S.W.3d at 423, n.3 (quoting and questioning ***Burks***, 373 S.W.3d at 6-7), 429 (Witt, J., concurring, also questioning ***Burks***).

In ***Burks***, we largely tracked, repeatedly cited, and went no further than the Western District's excellent 2002 HGN analysis in ***Rose***, as seen by summarizing relevant parts of both cases back-to-back.

*Rose, 86 S.W.3d at 97-99*

In affirming admission of a HGN test, the Western District cited the two-part foundation: (1) the officer had eight or more hours of HGN test training; and (2) the test was properly administered. ***Id***. at 98-99. The record showed the officer had such training "and the transcript reveal[ed] that the test was properly administered,"

---

458 S.W.3d at 427 (Witt, J., concurring). Our record shows the officer *did* check for eyeglasses, which the trial court credited, and Johnson does not claim otherwise on appeal.

so our colleagues found "sufficient foundation" to admit the test results. *Id*. at 99. Defendant Rose's criticisms could and "should have been borne out through the various options available to him at trial, such as cross-examination," *id*., since HGN testing may *indicate* intoxication, but "[t]hat ultimate conclusion rests with the trier of fact, who is free to believe or disbelieve the officer's testimony and to ascribe the weight given to it." *Id*. at 98.

*Burks, 373 S.W.3d at 6-7 & n.4*

This court faced a HGN foundation complaint, specifically that an officer's instructions had not tracked NHTSA guidelines. *Id*. at 6. As in our present case, no guidelines had been made part of the appellate record. *Id*. at n.4. We undertook a *Rose*-like review anyway, as we could, based on the record we had:

- As in *Rose*, we noted the two-step foundation. *Id*. at 6.

- Also as in *Rose*, we found from the record that the officer had enough training and had properly performed the test. *Id*. (citing *Rose* as "setting out the requisite steps involved in the proper administration of an HGN test").

- Finally, and again citing *Rose* in support, we noted that challenges to the properly-admitted HGN testimony would therefore "go to its weight, rather than to the admissibility of the test results." *Id*. at 7 (citing *Rose*).

## Conclusion

We find no merit in Johnson's arguments for reversal. Judgment affirmed.


DANIEL E. SCOTT, P.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS

6