

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | WD81399 |
| Respondent, | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| JEANNE CAPOZZOLI, | ) | June 18, 2019 |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Patricia S. Joyce, Judge**

**Before Division Three: Thomas H. Newton, Presiding Judge,**
**Anthony Rex Gabbert, and Edward R. Ardini, Judges**

Ms. Jeanne Capozzoli appeals the conviction by a Cole County jury for the class B felony of driving while intoxicated (DWI); she was sentenced as a chronic offender to seven years in the Department of Corrections. She raises two issues of first impression involving a 2017 change in the law as to the admissibility of expert testimony going to mental condition when it is an element of or a defense to a crime and the adoption in Missouri of the *Daubert* standard for the admissibility of expert testimony.[1] We affirm.

---

[1] The *Daubert* standard is a reference to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Jefferson City Police Officer Lucas Scheidt observed Ms. Capozzoli stopped at a green light in the fast lane of traffic with the high beams on and noticed that she did not dim them for approaching or passing vehicles when she proceeded to drive.[2] He followed the car and observed that she turned the headlights off and the car wove back and forth in the lane. Officer Scheidt activated emergency lights to stop the vehicle, but she did not, so he activated the siren. Ms. Capozzoli continued driving slowly and weaving, nearly hitting another vehicle. She finally came to a stop in a lane of travel, despite having passed several places to pull off the road. Officer Scheidt told Ms. Capozzoli that she was stopped because she failed to dim the headlights and turned them off altogether at night when they were required. According to the officer, she eventually turned the lights back on but seemed confused. Ms. Capozzoli claimed she had been looking for an address and that was why her high beams were on. She also indicated that she had been texting friends at the stoplight to get the address. The officer noticed the smell of alcohol coming from inside the vehicle and thought that Ms. Capozzoli's eyes were glassy. When the officer asked her about drinking, Ms. Capozzoli said that she had consumed a vodka tonic earlier in the evening before driving.

Officer Scheidt asked Ms. Capozzoli to exit the car for the standard field-sobriety tests. She had not placed the vehicle in park, so it continued to roll

---

[2] "We view the facts in the light most favorable to the jury's verdict." *State v. Browning*, 458 S.W.3d 418, 419 n.1 (Mo. App. W.D. 2015) (citation omitted).

when she started to get out. He had to tell her several times to put the vehicle into park and observed that this seemed to confuse her. She continued to act confused, taking short, choppy steps once she left the car, which Officer Scheidt interpreted as impaired behavior. He administered the horizontal gaze nystagmus, walk-and-turn, and one-leg-stand tests and observed a number of impairment indications, or clues, as to each.[3] Before the officer testified in detail during the November 2017 jury trial about the tests and their results, defense counsel objected to the testimony, stating that the new expert-testimony law "does not allow someone to get to mental state. . . . The fact of intoxication is a jury question. The jury gets to determine whether someone is intoxicated, not the officer." The court overruled the objection and noted a continuing objection.

Believing that Ms. Capozzoli was too impaired to be driving, Officer Scheidt arrested her for DWI and drove her to the police station. He searched her and found a pill in one of her pockets.[4] Ms. Capozzoli agreed to undergo breath sampling and told the officer that she had had two glasses of wine earlier in the evening and had taken an Ativan at 3:30 p.m. She also misstated the day's date. Her blood-alcohol level was less than 0.08% about an hour after the traffic stop, and the officer was concerned that the alcohol percentage was too low at

---

[3] On cross-examination, defense counsel was able to elicit from Officer Lucas Scheidt some concessions as to how he had administered the horizontal gaze nystagmus test that may have called its reliability into question. Because this is not the basis for Ms. Capozzoli's appeal, however, we do not consider this matter further. *See Browning*, 458 S.W.3d at 429 (Witt, J., concurring) ("If not properly administered, the HGN [horizontal gaze nystagmus] test loses its scientific reliability and becomes irrelevant to the issues before the court.").

[4] An exhibit identifying the pill as lorazepam was admitted into evidence with no objection.

0.075% given her signs of impairment. Officer Scheidt consulted with drug-recognition examiner Officer Shawn Dumsday, and he suggested that Officer Scheidt request that Ms. Capozzoli take a blood test. Her blood was drawn at an area hospital about an hour-and-a-half after the traffic stop. A state highway patrol criminalist, who was certified as a forensic toxicologist, testified at trial that lorazapam, a controlled substance, was in the blood sample. This witness also testified that, at the levels observed, in combination with alcohol, the drug would enhance symptoms of "drowsiness, dizziness, difficulties with coordination, confusion, and divided-attention tasks." Defense counsel objected to this witness testifying about intoxication on the same basis as the challenge to Officer Scheidt's testimony. The trial court overruled the objection but showed it as a continuing objection. The criminalist further testified that the label for the drug would have indicated that a person taking the drug should not drive an automobile. Defense counsel renewed his objection to testimony about intoxication when trial resumed the next day before Officer Dumsday took the witness stand.[5] Again, the trial court overruled the objection and noted a

---

[5] Before the November 2017 trial, Ms. Capozzoli filed a motion in limine to exclude the testimony of Officer Shawn Dumsday. The motion requested a *Daubert* hearing under a change to section 490.065, effective August 28, 2017, regarding the admissibility of expert testimony. She specifically requested that the trial court require the State to prove that the officer "is qualified as an expert," "his testimony is the product of reliable principles and methods," and "he has reliably applied the principles and methods to the facts of the case." The motion also contended that the officer's testimony was irrelevant and that his opinion should be excluded because he conducted a medical examination of Ms. Capozzoli "and is offering a medical diagnosis, without proper medical training and licensing." The matter was argued before trial, but no evidence was taken on the matter. The trial court overruled the motion in limine. Ms. Capozzoli renewed the *Daubert* objection before Officer Dumsday testified, and then she challenged the court's decision allowing him to testify, as well as its admission of Officers Scheidt and Dumsday's testimony that she was intoxicated, in her motion for acquittal notwithstanding the verdict or for new trial.

4

continuing objection. Officer Dumsday testified about his contact with Ms. Capozzoli after her arrest, noting that her face was flushed and her eyes were bloodshot. He also noticed an odor of alcohol "from her person" and testified that her speech was slurred. During the interview with Ms. Capozzoli, Officer Dumsday learned that she had not eaten that day but had consumed two glasses of wine before noon. Ms. Capozzoli also indicated that she had taken Ativan, a depressant also known as lorazapam, at 10 p.m. the night before and then again at 2 a.m. Officer Dumsday administered a number of tests over the next 45 minutes to an hour, and concluded that she was under the influence of alcohol and a depressant.

The State charged Ms. Capozzoli with the class B felony of DWI for operating a motor vehicle in December 2015 while under the influence of a combination of alcohol and lorazepam. She was also charged with a class A misdemeanor for driving while her license was revoked, a charge to which she pleaded guilty. Before returning its verdict, the jury asked two questions about intoxication. The first sought a clarification of the term "intoxicated condition," i.e., "Does intoxicated condition mean as stipulated by law as the legal limit in Missouri as .08?" The second question addressed the same instruction—No. 6— with the jury asking, "Does under the influence mean present in the body or impairment?" As to both, the trial court instructed the jury to be guided by the instructions already given. After the jury reported that it was divided 11-1, the trial court, over defense counsel's objection, read a "hammer instruction" to the

5

jury, because it had already been deliberating for three hours and had been persistent in asking questions. The jury found Ms. Capozzoli guilty of DWI, and the trial court overruled the motion for judgment of acquittal notwithstanding the verdict or for new trial, sentenced her to seven years in the Department of Corrections, with a concurrent term of thirty days in the county jail for driving while revoked.[6] Ms. Capozzoli filed this appeal.

**Legal Analysis**

In the first two points, Ms. Capozzoli challenges the trial court's admission of testimony by Officers Scheidt and Dumsday as to whether she was intoxicated, arguing that the 2017 revision of section 490.065.2(3)(b) "prohibits an expert from offering an opinion 'about whether the defendant did . . . have a mental state or condition that constitutes an element of the crime charged,'" and, had this evidence not been admitted, there is a reasonable probability that the trial outcome would have been different. To show prejudice, she points to the jury's questions and the judge's hammer instruction as indications that the jury struggled with the intoxication issue. We review a challenge to the admission of evidence at trial for an abuse of discretion. *State v. Ellis*, 512 S.W.3d 816, 825 (Mo. App. W.D. 2016).

> That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. If an abuse of discretion is found, our role on direct appeal is to review for prejudice, not mere error, and we will

---

[6] After jury selection and outside its presence, the trial court found Ms. Capozzoli to be a prior and persistent offender.

reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. . . . Trial court error in the admission of evidence is prejudicial if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error.

*Id.* (citations omitted). To the extent that we are called on to interpret a statute, our review is *de novo*. *State v. Fanning*, 557 S.W.3d 449, 451 (Mo. App. W.D. 2018).

The statutory section on which Ms. Capozzoli relies went into effect in 2017: "In a criminal case, an expert witness shall not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." § 490.065.2(3)(b), RSMo (2017 Supp.). Ms. Capozzoli acknowledges that "mental state" has been defined under Missouri law as the *mens rea* element of a crime, such as purpose, knowledge, recklessness, and negligence. Thus, her argument hinges on us finding that the "intoxicated condition" element of a DWI offense constitutes a "mental condition." Ms. Capozzoli contends that nothing in section 490.065.2(3)(b) defines what "mental condition" means and argues that intoxication is obviously a mental condition, because it "affects the mind's capabilities."

It is unclear to us what criminal offenses the Legislature had in mind when it included "mental condition" in the proscription on expert testimony where it is an element of the crime charged. Still, we do not believe that

7

intoxication is a mental condition about which an expert may not testify in a DWI case.[7] In fact, our courts have "characterized intoxication as a *physical* condition usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes." *State v. Ruark*, 720 S.W.2d 453, 454 (Mo. App. S.D. 1986) (emphasis added) (citation omitted). Hence, we find that intoxication is not a mental condition, and the statute's limitation does not apply. Points one and two are denied.

In the third point, Ms. Capozzoli argues that the trial court abused its discretion in admitting Officer Dumsday's testimony that she was under the influence of a central nervous system depressant and alcohol in that section 490.065.2(1)(c) requires the evidentiary proponent to show that an expert's testimony "is the product of reliable principles and methods" and the State did not present any evidence for the court to make the required finding.[8] The trial

---

[7] The argument Ms. Capozzoli presents assumes that testimony related to a person's intoxicated condition falls within the sphere of expert testimony. In the past, however, lay witnesses have been held competent to testify about the intoxication of another person from alcohol consumption. *See, e.g., State v. Moffett*, 474 S.W.3d 248, 250-51 (Mo. App. S.D. 2015). Because we find that "intoxication" is not a "mental condition," is unnecessary for us to further examine this issue.

[8] Section 490.065.2 states, in relevant part:

In all actions except those to which subsection 1 of this section applies:

(1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
 (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
 (b) The testimony is based on sufficient facts or data;
 (c) The testimony is the product of reliable principles and methods; and
 (d) The expert has reliably applied the principles and methods to the facts of the case.

court overruled this objection to Officer Dumsday's testimony without discussion or comment, but it seemed that the trial court was most interested in whether the results of testing undertaken by drug-recognition examiners had been deemed admissible by Missouri appellate courts. To our knowledge, no appeals court has addressed the admissibility of such testimony under the new standard the Legislature adopted in 2017 or the foundational requirements for its admissibility if it is in fact admissible under the statute's amended provision. Still, because we find that, regardless of the admissibility of the challenged evidence, Ms. Capozzoli suffered no prejudice, it is not necessary to do so here.[9]

In the present case, the state called a criminalist who testified about the result of testing conducted on the blood sample provided by Ms. Capozzoli. According to the criminalist, Ms. Capozzoli had lorazepam, a controlled substance, in her system which, in combination with alcohol, would enhance symptoms of "drowsiness, dizziness, difficulties with coordination, confusion, and divided-attention tasks." This testimony, which is not challenged on appeal, and Officer Dumsday's testimony were largely redundant. As a result, we do not

---

[9] The parties discuss *State v. Hoy*, 219 S.W.3d 796, 799 n.2 (Mo. App. S.D. 2007) (expressing concern about the use of the term "expert" in relation to a "drug-recognition examiner" in front of a jury that could be confused or misled by "the use of this title"), which was decided when the older *Frye* standard for the admissibility of expert testimony applied. Because the *Frye* issue had not been properly preserved, the court analyzed it for plain error and found none because a toxicology expert, whose qualifications and testimony had not been challenged on appeal, identified the drugs in the defendant's system and described the effects such drugs would have on a person. *Id.* at 810. According to the court, those effects "coincided with the impairments exhibited by Defendant," thus, admitting drug-recognition examiner results "cannot be said to have constituted a manifest injustice or miscarriage of justice." *Id.* The *Frye* standard was derived from *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and was superseded by the *Daubert* standard in the federal courts.

9

believe there is a reasonable probability that the jury would have reached a different conclusion had Officer Dumsday not testified. This point is denied.

## Conclusion

Finding no error in the trial court's admission of the police officers' testimony that Ms. Capozzoli was intoxicated and further, finding no prejudice concerning Officer Dumsday's testimony in light of the unchallenged testimony of the State's criminalist, we affirm.

/s/ *Thomas H. Newton*
Thomas H. Newton, Presiding Judge

Anthony R. Gabbert and Edward R. Ardini, Judges concur.

10